UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FILED

OCT 2 7 2014

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

| | | |
|---|---|---|
| RICHARD WINSTON | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE No.: 2:14 cv 547 |
| | ) | |
| | ) | IN ADMIRALTY |
| UNITED STATES OF AMERICA | ) | |
| Defendant | ) | |
| | ) | |

**Serve:**

**The Honorable Eric Holder**
**United States Attorney General**
**U.S Department of Justice**
**950 Pennsylvania Avenue, N.W.**
**Washington, D.C. 20530-001**

**Neil H. MacBride**
**Office of the United States Attorney**
**For the Eastern District of Virginia**
**2100 Jamieson Avenue**
**Alexandria, VA. 22314**

## COMPLAINT IN ADMIRALTY

COMES NOW the Plaintiff complaining of personal injuries sustained by him as a result of the negligence of the officers and crew of the USS BONHOMME RICHARD while at anchor in or near HONG KONG, and in support thereof states as follows:

### JURISDICTION, VENUE AND PARTIES

1) This action arises under and is brought pursuant to the Suits in Admiralty Act, 46 U.S.C. §§ 741-752 et. seq., the Public Vessels Act, 46 U.S.C. §781-790 et. seq. and General Maritime Law, 28 U.S.C. §1333. This is a case of admiralty and maritime jurisdiction.

2) The Plaintiff Richard Winston is a citizen of the United Kingdom and resident of Hong

Kong.

3) The acts complained of herein occurred upon navigable waters and involve activity which bears a significant relationship to traditional maritime activity. Embarking and disembarking a vessel on navigable waters, as in this case, is a traditional maritime activity.

4) The vessel involved in this matter, the USS BONHOMME RICHARD, was, at all times relevant herein, a United States Naval Warship located at anchor in Hong Kong harbor.

5) The Defendant United States of America is a sovereign and at all times material hereto, has acted through its agency, the United States Navy, within the Department of Defense.

6) This is an admiralty or maritime claim for purposes of F.R.C.P. 9(h), 14(c), 38(e), and 82 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

## FACTUAL ALLEGATIONS

7) Mr. Winston received an invitation from the US Consulate in Hong Kong to visit and tour the USS BONHOMME RICHARD (LHD 6).

8) On or about the October 30, 2012, Mr. Winston took a water taxi from the US Navy area at Fenwick Pier in Hong Kong out to the pontoon dock in the harbor where the USSBONHOMME RICHARD lay at anchor docked aside the pontoon.

9) By the time the visitors arrived at the pontoon dock next to the warship it was dark outside.

10) The sea conditions were choppy, causing the pontoon to rock and move with great force and angle.

11) There were two other boats carrying approximately another 100 visitors to the ship.

12) Another water taxi had discharged its passengers before Mr. Winston's boat arrived

and attempted to moor to the pontoon beside the USS BONHOMME RICHARD.

13) Consequently, when the water taxi Mr. Winston was riding tried to moor next to the

pontoon, there was very little room on the platform of the pontoon for the disembarking

passengers to stand awaiting permission to board the USS BONHOMME RICHARD.

14) The pontoon itself was a floating platform with a surface that appeared to be concrete.

15) Upon information and belief, the US Navy, through a locally obtained husbanding

agent, requested the platform for ingress and egress to and from the warship.

16) On the pontoon there was a metal staircase approximately thirty (30) feet high rising

from the platform up into the side of the ship.

17) The staircase was on heavy rollers that were in contact with the concrete deck of the
pontoon. The rollers shifted the staircase as the pontoon moved in the choppy waters.

18) On information and belief, the purpose of the rollers were to permit the brow to move

with the motion of the pontoon as it moved with the sea, allowing the brow itself to

stay in place relative to the Quarterdeck of the vessel.

19) The Plaintiff and a number of people stood in turn waiting to go up the metal staircase.

20) While there may have been some naval personnel on the platform, there was no one

guiding visitors up the stairs when Mr. Winston was waiting for his turn to board.

21) There was a brief mention in the Navy briefing that there had been incident the day

before involving an invitee on the pontoon by the stairs. The visitors were not advised

that the stairs were dangerous and could move due to the changing sea conditions.

The US Navy officers and sailors ignored the risk to the visiting passengers by

allowing them to stand dangerously close to the rollers on the metal staircase.

22) Additionally, there was no railing or protection to keep visitors from moving their feet under the rollers.

23) Due to the crowded conditions on the pontoon, the officers and crew of the USS BONHOMME RICHARD required the visitors to line up in such a manner that required them to stand with their feet near the rollers.

24) As Mr. Winston stood waiting for his turn to board, the pontoon moved due to the heavy sea conditions, causing the rollers to move violently across Mr. Winston's foot, crushing it underneath the rollers.

25) Because of the lack of Navy personnel on the platform below the vessel, Mr. Winston was forced to wait a period of time until the staircase rolled off his foot in the other direction.

26) Given the weight of the staircase, including the people already standing on it, Mr. Winston could hear the bones in his foot being broken, shattered, and crushed while he waited helplessly and in agony for the staircase to move back again.

27) Mr. Winston was in excruciating pain as he was taken up the brow after his foot was crushed.

28) Mr. Winston was then examined by US Navy Medical personnel. He was x-rayed aboard the ship and the doctor advised that there were broken bones and that Mr. Winston would have to go to a hospital in Hong Kong for emergency surgical care and immediate treatment.

29) Due to of the extent of Mr. Winston's injuries, he was in excruciating pain but received very little care and attention from the crew who, as he was told by the medical staff, were prohibited from going ashore beyond the pier.

30) Mr. Winston was forced to wait approximately two (2) hours at the Fenwick Pier, in the rain, while the Naval Officers decided on a course of action.

31) Mr. Winston contacted his wife and had her pick him up from Fenwick Pier and take him to a Hospital in Hong Kong where he underwent emergency surgery.

32) Mr. Winston's proximal phalanx and distal phalanx had been fractured in four (4) separate places. Mr. Winston had a metal plate along with six (6) screws in his distal phalanx right hallux inserted in his body during the surgical repair.

33) The laws of the United Kingdom allow for a United States citizen to bring the same lawsuit against the United Kingdom under similar circumstances.

## COUNT I
## GENERAL NEGLIGENCE

34) Paragraphs one (1) through thirty four (33) above are incorporated as if fully set forth herein.

35) The officers and crew of the USS BONHOMME RICHARD owed embarking and disembarking passengers, such as Winston, a duty of due care to keep the pontoon and the steel ladder free from hazards, to direct embarking and disembarking passengers away from open and obvious hazards and dangers, such as the steel ladder and pontoon on which they were standing; and to warn embarking and disembarking passengers of the dangers of the rollers and the movement of the pontoon causing them to roll on their feet.

36) The Commanding Officer, the officers, and crew breached their duty to Winston by failing to put up any warning signs about the rollers, by failing to direct embarking and disembarking passengers away from the rollers, and by failing to warn embarking

and disembarking passengers of the dangers and hazards the rollers presented as a result of the heavy seas.

37) As a direct and proximate result of the breach of their duty to Winston by the Commanding Officer, the officers, and crew of the US Naval warship, Mr. Winston suffered extensive damage to his foot, necessitating surgical intervention and permanent and lasting loss of function and pain.

38) As a consequence of the foregoing, the United States, if a private person, would be liable to the Plaintiff herein.

WHEREFORE the Plaintiff demands judgment against the Defendant in such sums as will fully, fairly, and justly compensate the Plaintiff.

39) That Plaintiff Richard Winston have and recover of the Defendant compensatory damages in sums in excess of FIVE HUNDRED THOUSAND Dollars ($500,000.00);

40) That the Plaintiff has such other and further relief as the Court deems just and proper.

RICHARD WINSTON

By: _____
Of counsel

J. Thompson Cravens (VSB #27559)
Cravens & Noll, P.C.
9011 Arboretum Parkway
Suite 200
Richmond, Virginia 23236
(804) 330-9220
(804) 330-9458 Facsimile

J. Thompson Cravens (VSB #27559)
Cravens & Noll, P.C.
9011 Arboretum Parkway
Suite 200
Richmond, Virginia 23236
(804) 330-9220
(804) 330-9458 Facsimile
joe@cravensnoll.com
David P. Morgan (VSB #70211)
Marcari Russotto Spencer & Balaban,  PC
1 Park West Circle, Suite 101
Midlothian, VA  23114
(804) 307-6584
(757) 299-2604
davidm@mrslawfirm.com